A04A0306. BROWN v. THE STATE.
(600 SE2d 731)

MIKELL, Judge.

After a jury trial, Leon Brown III, was convicted of burglary, aggravated assault (three counts), possession of a firearm during the commission of a crime (four counts), and possession of a firearm by a convicted felon.[1] The appellant challenges the sufficiency of the evidence and argues that his conviction should be reversed due to the prosecutor's improper closing argument. We affirm.

---

[1] Leon Brown was tried with two co-defendants, Lewis Brown and Jerome Jordan. Jordan was acquitted of all of the charges, and Lewis Brown was convicted of burglary, three counts of aggravated assault, and four counts of possession of a firearm during the commission of a crime. For purposes of clarity, Leon and Lewis will be referred to herein by their first names.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and an appellant no longer enjoys the presumption of innocence. This court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*[2] and does not weigh the evidence or determine witness credibility. Conflicts in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, we must uphold the jury's verdict.[3]

So viewed, the evidence shows that at the relevant time, brothers Curtis (referred to herein as "Curtis") and Gerald Travis Mance (referred to herein as "Travis"), lived at 731 Walden Hills Court in Augusta, Georgia. At approximately 2:00 a.m. on May 1, 2001, Curtis, who was in his bedroom, heard a door slam, and moments later, his bedroom door was kicked in. Three masked men stood in his doorway, one of whom held a .44 caliber gun and the others, what appeared to be 9 millimeter handguns. The first man pulled Curtis from his bed, stuck the gun in his face, and demanded money. When Curtis replied that he did not have any money, the man stated, "well, we're going to get something tonight."

Curtis led the men to his brother's room, yelling that there were some intruders in the house so that Travis would know to get his weapon. One of the men pushed the door open, and Travis and the men began shooting at each other. Curtis was shot five times and grazed by two bullets. Travis shot the man who was carrying the .44, who removed his mask, giving Curtis an opportunity to see his face. At trial, Curtis identified Lewis as the man who shot him.

Travis used Lewis's .44 to continue shooting at the men as they left the apartment, then closed and locked his door. One of the men then shot through Travis's bedroom door. Curtis testified that he did not know any of the men and that they did not have permission to be in the apartment.

When he arrived at the hospital, Curtis recognized Lewis's shoes, pants, and shirt and identified him to the police. Curtis also gave the police general descriptions of the other men.

Lewis, the only defendant to testify at trial, stated that he and Travis worked together and that he also knew Curtis; that he went to their apartment that night to buy drugs after talking with Travis; that Leon, who also wanted to buy drugs, picked him up and had two

---

[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] (Footnotes omitted.) *Roberts v. State*, 242 Ga. App. 621 (530 SE2d 535) (2000).

other passengers, "Squeaky" and Jerome Jordan, in the car; that he and Leon met with Curtis at a Wendy's restaurant, and Curtis led them to the apartment; and that only he and Squeaky[4] went into the apartment. Lewis further testified that Travis pulled out a 9 millimeter gun; that he pushed Curtis into Travis and that when he tried to run, he was shot; that he did not have a gun, but Squeaky carried a 9 millimeter; and that gunshots were exchanged. Lewis stated that he was shot seven times; that Travis took his money; and that an unidentified man and Travis threw him down the stairs. Lewis admitted that he did not tell this version of events to the police when he was first questioned.

Lewis testified that Leon drove him to the hospital. Officer Allen Pitt of the Medical College of Georgia Police Bureau testified that he saw a green Ford Tempo drop off a subject who was bleeding profusely at the hospital's emergency room doors. He followed the car and noted its tag number. Deputy Aaron Hannsz located the car at approximately 3:15 a.m. and arrested its two occupants, Leon and Jordan. There was no one in the rear seat of the car. No firearms were located, but both men had blood on their shirts, pants, and underwear.

Investigator Charlena Graham arrived at the scene at 2:43 a.m. When she arrived, she noticed a trail of blood leading down the front and rear stairs to the apartment, extensive damage to the front door, a shoe print on that door, a large amount of blood in the foyer and on the walls, and numerous bullet holes. Investigator Graham determined that the deadbolt on the door was locked when the door was forced open. Travis and Jamiee Lynn Matherne were present in the apartment, and Investigator Graham transported both of them to the police station for questioning.

After interviewing Travis and Matherne, Investigator Graham interviewed Leon, whose taped statement was played for the jury. Leon claimed that he picked up Lewis, who was a friend and former co-worker; that Lewis told him that he had been stabbed so he drove him to the hospital; and that he helped Lewis to the hospital door. Further, after leaving the hospital, he picked up Jordan and was dropping him off when the police stopped him. Leon surmised that Jordan had blood on his clothes because he sat in the back passenger seat where Lewis had been sitting. Otherwise, he maintained that he had been alone since 9:00 p.m.

Jordan's taped statement was also played for the jury. Jordan stated that he was given a ride by Leon; that Lewis called and they picked him up; that Lewis directed them to go to some apartments

---

[4] Squeaky was not called as a witness, and there was no other evidence offered that he was involved.

and left them in the car; that when Lewis returned to the car, he had been shot, so they dropped him off at the hospital; and that only the three of them were in the car.

The physical evidence collected at the crime scene established that the front door was forcibly opened; that the footprint on the door matched the pattern on Lewis's shoe; that there was blood spatter in various areas of the apartment; that a .44 magnum and 9 millimeter Taurus were found at the scene; that several shots were fired in two directions; that Travis's fingerprint was the only fingerprint on the .44 caliber gun; that some of the 9 millimeter shell casings were fired from Travis's gun but others came from a Lorsin or Bryco 9 millimeter gun that was not found; and that Lewis's blood was found on the back stairs to the apartment. When the sheriff's office confiscated the property of the defendants, no money was located. Also, no drugs were found in the apartment.

1. Leon argues that the evidence offered against him was circumstantial and insufficient to support his convictions.

> To support a verdict, circumstantial evidence need exclude only reasonable hypotheses, not exclude every inference or hypothesis except that of the defendant's guilt. Whether circumstances were sufficient in this case to exclude every reasonable hypothesis except that of defendant's guilt was a question for the jury. It is only when the evidence is insupportable as a matter of law that the jury's verdict may be disturbed, even where the evidence is entirely circumstantial.[5]

We find that the direct and circumstantial evidence presented was sufficient to prove that Leon was directly involved in the commission of the crimes, or at the very least, was a party to the crimes.[6]

(a) *Burglary.* "A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another."[7] Curtis testified that three men forcibly entered the apartment, demanding money. Jordan stated that only he, Lewis, and Leon were in the car. Despite Leon's denial that he was involved, Lewis and Jordan testified that Leon drove Lewis to the apartment and to the hospital. Thus, the evidence authorized the jury's finding that Leon forcibly entered the apartment to commit robbery.

---

[5] (Citations and punctuation omitted.) *Davis v. State*, 263 Ga. App. 230, 231 (1) (587 SE2d 398) (2003).

[6] OCGA § 16-2-20.

[7] OCGA § 16-7-1 (a).

(b) *Aggravated assault.* Leon was convicted of the aggravated assault of Curtis, Travis, and Matherne. An aggravated assault occurs when a person assaults with the intent to rob or with a deadly weapon or any object which, when used offensively, is likely to result in serious bodily injury.[8] As stated above, the jury was authorized to believe that Leon entered the apartment. Curtis testified that all three men carried guns, that he was shot, and that shots were fired at Travis in the direction of his bedroom and through the bedroom door. Matherne testified that she was under the bed in Travis's bedroom when the shots were fired.

Based on Leon's statement, he only came into contact with Lewis when he helped him to the hospital door. However, the evidence showed that there was blood on Leon's pants, shirt, and boxer shorts. Furthermore, Officer Pitt testified that Lewis was ejected from the vehicle in a hurried manner, not walked to the door. Thus, the jury was authorized to disbelieve Leon's statement as "it serves as the arbiter of conflicts in the evidence before it."[9]

(c) *Possession of a firearm during the commission of a crime.* Leon was convicted of possessing a firearm during the commission of the burglary and each of the aggravated assaults. Any person possessing a firearm during the commission of a crime against the person of another or during an unlawful entry into a building, which crimes are felonies, commits a felony.[10] The evidence supports the convictions.

(d) *Possession of a firearm by a convicted felon.* After the jury rendered its verdict on the offenses discussed above, it received evidence that Leon was a convicted felon. Thus, the evidence was sufficient to convict him of this offense as well.

2. Leon argues that the prosecutor's closing argument was improper because he told the jury, "everyone says, 'we've got to do something about crimes with guns.' " Though counsel for defendant Jordan objected to this statement, Leon's counsel did not join the objection or make an objection of his own. "[W]here a defendant does not expressly adopt the objection of a co-defendant, he thereby waives that objection and may not utilize it to gain review."[11] Therefore, Leon cannot now raise this issue on appeal.[12]

Leon also argues that the prosecutor improperly commented that the defendants were guilty because they did not offer an alibi witness,

---

[8] OCGA § 16-5-21 (a) (1), (2).

[9] (Citation and punctuation omitted.) *Campbell v. State,* 258 Ga. App. 863, 866 (575 SE2d 748) (2002).

[10] See OCGA § 16-11-106 (b).

[11] (Punctuation and footnote omitted.) *Dix v. State,* 246 Ga. App. 338, 340 (2) (540 SE2d 294) (2000).

[12] Id.

physical evidence, or scientific evidence to disprove their involvement in the crime. In response thereto, Leon's counsel stated, "Your Honor, the reason our client didn't present any evidence —," then Jordan's counsel objected and the objections were overruled before either attorney could continue to speak. Pretermitting whether this alleged error was properly preserved for appeal, "[t]he State may note in closing argument the defense's failure to present any evidence to rebut the proof adduced by the State. It is reference to the failure of the defendant himself to testify which is prohibited."[13] There is no showing that the prosecutor referred to Leon's failure to testify. Thus, no error occurred.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JUNE 2, 2004.

*Ellis R. Garnett*, for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Madonna H. Little, Assistant District Attorneys*, for appellee.

---

[13] (Citations omitted.) *Hutchinson v. State*, 179 Ga. App. 485, 486 (2) (347 SE2d 315) (1986).
[1] 251 Ga. App. 270 (553 SE2d 868) (2001).