## A10A1013. MAYS v. THE STATE.
(703 SE2d 21)

McMURRAY, Senior Appellate Judge.

Following a bench trial, Ryan Alexander Mays was convicted of three counts of burglary, two counts of armed robbery, and possession of a firearm during the commission of a crime. The trial court denied Mays's motion for a new trial and thereafter granted him an out-of-time appeal.[1] On appeal, Mays contends that the evidence is insufficient to sustain his convictions and that the trial court erred in admitting certain photographs into evidence. For the reasons that follow, we affirm.

> On appeal from a bench trial resulting in a criminal conviction, we view all evidence in the light most favorable to the trial court's [judgment of conviction], and the defendant no longer enjoys the presumption of innocence. We do not re-weigh testimony, determine witness credibility, or address assertions of conflicting evidence; our role is to determine whether the evidence presented is sufficient for a rational trier of fact to find guilt beyond a reasonable doubt.

(Citations and punctuation omitted.) *Trujillo v. State*, 304 Ga. App. 849 (698 SE2d 350) (2010).

So viewed, the evidence shows that a series of burglaries occurred in Rockdale County between March and April 2007. The first burglary occurred at a residence located at 2180 Hampton Trail. The Hampton Trail property owner testified that in March 2007, two young males, who were carrying backpacks, came to her residence. One of the males approached her and asked for a random person. When she informed the male that he had the wrong house, he and his companion walked away. Two weeks later, on the evening of March 12, 2007, the property owner and her daughter returned to their home and discovered that the front door had been forced open and the house had been ransacked. They called the police and reported that several items had been stolen during the burglary, including three laptop computers, two digital cameras, a video camera, and jewelry. The property owner testified that she did not authorize anyone to enter and take the items from her residence.

Thereafter, on April 20, 2007 a burglary occurred at the residence located at 3311 Haverhill Court. The property owner recalled

---

[1] This is the second appearance of this case before our Court. Mays's first appeal was dismissed on the ground that his motion for a new trial was untimely filed. Upon remand of the case to the trial court, Mays filed a motion for an out-of-time appeal, which the trial court granted. The instant appeal then ensued.

that before she left for work that morning, she observed a black Mercedes vehicle with two young male occupants parked in the cul-de-sac near her home. She drove behind the vehicle and noticed that its license tag was covered. As she approached the vehicle, the driver started the engine and drove slowly to a nearby middle school. Later that day, when the property owner's son returned home from school, he discovered that the garage door was open and the house had been burglarized. The french doors in the back of the house had been forced open and several items had been stolen, including video game systems, video games, a camera, a DVD player, and a collection of knives. The property owner further discovered that one of the burglars had left behind a backpack and a student's hall pass bearing the name of "Christopher Peeples." The property owner testified that she had not authorized anyone to enter and take the property from her residence.

The third burglary occurred on the afternoon of April 26, 2007 at the residence located at 1776 Salem Woods Drive. One of the residents testified that while he was at home with a friend, he heard a knock on the front door. When the resident answered the door, five males, wearing masks and brandishing firearms, charged inside. The resident recalled that one of the perpetrators wore a red mask and that another perpetrator wore a hood that was pulled tightly around his head. One of the perpetrators pointed a shotgun at the resident and his friend, commanded them to lie on the floor, and threatened to shoot them if they moved. At one point during the incident, one of the perpetrators called out the name "Chris" to get the attention of his accomplice. The perpetrators ransacked the house and stole several items, including cash from the wallets of the resident and his friend, a PlayStation 3 video game system, video games, DVDs, an iPod, a laptop computer, a .22 caliber rifle, and one gram of marijuana. After gathering the stolen items in bags, the perpetrators fled through the back door of the residence.

The Rockdale County Sheriff's Department launched an investigation and obtained information naming Mays and Peeples as possible suspects in the Haverhill Court burglary. The investigators went to Mays's residence and obtained his mother's consent to search his bedroom. During the search of Mays's bedroom, the investigators recovered several items that had been stolen during the three burglaries, including jewelry that had been stolen during the Hampton Trail burglary; games, electronics, knives, and a game system that had been stolen during the Haverhill Court burglary; and the PlayStation 3 video game system, video games, and DVDs that had been stolen during the Salem Woods burglary. The investigators also recovered a loaded shotgun and ammunition from Mays's bedroom.

Mays was arrested for the burglary offenses. After being read his *Miranda*[2] rights, Mays agreed to be interviewed by the investigators. In his statements, Mays provided inconsistent explanations for how he acquired possession of the stolen items. In one statement, Mays claimed that he bought the stolen items from "crack heads." In another statement, Mays claimed that Peeples gave him the stolen items for safekeeping.

After interviewing Mays, the investigators also arrested Peeples for the burglary offenses. Peeples owned a Mercedes vehicle that matched the description of the vehicle that had been observed by the Haverhill Court property owner prior to the burglary of her residence. The investigators searched Peeples's vehicle and recovered several items related to the Haverhill Court and Salem Woods burglaries, including a red ski mask that had been worn by one of the perpetrators in the Salem Woods burglary, an ammunition cartridge, and a ticket from a pawn shop where several of the stolen items had been sold. The investigators also searched Peeples's residence, where they recovered additional items related to the Haverhill Court and Salem Woods burglaries.

Peeples and Mays were jointly indicted for several burglary offenses. Peeples agreed to testify against Mays at trial. Peeples stated that he and Mays had attended the same high school and had become close friends. Peeples admitted that he had committed the Haverhill Court and Salem Woods burglaries, and testified that Mays had been his accomplice during those incidents. According to Peeples, Mays had suggested committing the Haverhill Court burglary in order to generate funds for an internet business that Peeples had begun to operate in his spare time. Peeples further stated that Mays had also participated in the Salem Woods burglary and that Mays had brandished the shotgun during that incident. Peeples described in detail the manner in which the Haverhill Court and Salem Woods burglaries were committed and his testimony was substantially corroborated by the victims' descriptions regarding those incidents.

Following the presentation of the evidence, the trial court found Mays guilty of the crimes charged.

1. Mays contends that the evidence was insufficient to support his convictions.[3] We disagree.

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[3] Although Mays was also found guilty of two counts of aggravated assault, the trial court merged those counts into the armed robbery convictions for sentencing purposes. Because the trial court did not enter judgment on the aggravated assault counts, we need not consider the sufficiency of the evidence as to those offenses. See *Nelson v. State*, 277 Ga. App. 92, 96 (1) (b) (625 SE2d 465) (2005).

(a) *Burglary.* "A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another[.]" OCGA § 16-7-1 (a). The rule has been long established in this state that "proof of recent, unexplained possession of stolen goods by the defendant is sufficient to create an inference that the defendant is guilty of the burglary of the goods[.]" *Bankston v. State*, 251 Ga. 730 (309 SE2d 369) (1983). See also *In the Interest of T. T.*, 282 Ga. App. 527, 528-529 (639 SE2d 538) (2006); *Brown v. State*, 157 Ga. App. 473, 474 (1) (278 SE2d 31) (1981). "[W]hether or not a defendant's explanation of his possession of the stolen property was satisfactory or reasonable is a question for the [factfinder]." (Citation omitted.) *Brown*, 157 Ga. App. at 474 (1).

Here, each of the property owners testified that their personal property had been stolen during unauthorized entries into their respective residences. The stolen items that had been taken during the burglaries were found in Mays's possession shortly thereafter. Moreover, Mays's explanations for his possession of the stolen items were inconsistent. Under these circumstances, the trial court, sitting as the factfinder, was authorized to find Mays guilty of each of the burglary offenses. See *In the Interest of A. D.*, 282 Ga. App. 586, 587-588 (1) (639 SE2d 556) (2006); *Brown*, 157 Ga. App. at 474-475 (1).

In addition, Peeples identified Mays as his accomplice in the commission of the Haverhill Court and Salem Woods burglaries. To authorize a conviction, the testimony of an accomplice must be corroborated. See OCGA § 24-4-8. However,

> corroborating evidence itself need not be sufficient to warrant [a] conviction, but only tend to connect and identify defendant with [the] crime. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a [judgment of conviction].

(Citations and punctuation omitted.) *Inman v. State*, 182 Ga. App. 209 (355 SE2d 119) (1987). Here, Peeples's testimony was corroborated by the property owners' descriptions of the Haverhill Court and Salem Woods burglaries along with the evidence of Mays's recent, unexplained possession of the stolen property. As such, the corroborated testimony of Mays's accomplice provided further support for his convictions of the Haverhill Court and Salem Woods burglaries. See *Gibson v. State*, 267 Ga. App. 473, 474-476 (1) (600 SE2d 417) (2004); *Inman*, 182 Ga. App. at 209-210.

Mays nevertheless argues that the circumstantial evidence failed

to exclude every other reasonable hypothesis save that of his guilt and that his accomplice's testimony lacked credibility and was given in exchange for a reduced sentence. His arguments are unavailing.

> Whether circumstances were sufficient in this case to exclude every reasonable hypothesis except that of defendant's guilt was a question for the [factfinder]. It is only when the evidence is insupportable as a matter of law that the [judgment of conviction] may be disturbed, even where the evidence is entirely circumstantial.

(Punctuation and footnote omitted.) *Brown v. State*, 267 Ga. App. 642, 645 (1) (600 SE2d 731) (2004). See also *Moore v. State*, 277 Ga. App. 474, 475-476 (1) (627 SE2d 107) (2006); *Carter v. State*, 246 Ga. App. 891, 893 (1) (b) (543 SE2d 42) (2000). Furthermore, the determination of witness credibility is entirely within the province of the factfinder. See *Dyer v. State*, 298 Ga. App. 327, 329 (1) (680 SE2d 177) (2009). As previously stated, Mays's burglary convictions were supportable as a matter of law. We will not disturb the trial court's determinations as to the reasonableness of Mays's explanations or the credibility of the witness' testimony. See *Dyer*, 298 Ga. App. at 329 (1); *Carter*, 246 Ga. App. at 893 (1) (b).

(b) *Armed robbery.* "A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon[.]" OCGA § 16-8-41 (a). The evidence established that Mays had charged into the Salem Woods residence and had pointed a shotgun at the resident and his friend while taking their property. This evidence was sufficient to support Mays's armed robbery convictions. See id.; *Ham v. State*, 303 Ga. App. 232, 238 (1) (b) (692 SE2d 828) (2010); *Reed v. State*, 293 Ga. App. 479, 481 (1) (668 SE2d 1) (2008); *Bay v. State*, 266 Ga. App. 91, 91-92 (1) (596 SE2d 229) (2004).

(c) *Possession of a firearm during the commission of a crime.* "OCGA § 16-11-106 (b) (1) makes it a crime for any person to have a firearm during the commission of a crime against a person." (Punctuation and footnote omitted.) *Reed*, 293 Ga. App. at 481. The trial evidence established that Mays had possession of a firearm during his commission of the armed robbery offenses at the Salem Woods residence. The evidence thus authorized Mays's conviction of this offense. See OCGA § 16-11-106 (b) (1); *Reed*, 293 Ga. App. at 481.

2. Mays further contends that the trial court erred in admitting certain photographs into evidence. The trial court overruled Mays's objections to the admissibility of his photograph and a photograph of

the recovered property that belonged to one of the Salem Woods residents who had not been named as a victim in the indictment.

Pretermitting whether the photographs were improperly admitted, Mays has failed to show harm from the alleged error. Because this was a bench trial, "there is a presumption, in the absence of a strong showing to the contrary, that the trial judge sift[ed] the wheat from the chaff, ignor[ed] illegal evidence and consider[ed] only legal evidence." (Citation, punctuation and emphasis omitted.) *Jennings v. State*, 296 Ga. App. 767 (675 SE2d 623) (2009). See also *Pruitt v. State*, 164 Ga. App. 247, 249 (1) (296 SE2d 795) (1982). In ruling upon Mays's motion for a new trial, the trial court stated that it did not rely on the photographs in reaching its judgment of conviction. Consequently, the evidentiary rulings at issue were harmless. See id.

*Judgment affirmed. Barnes, P. J., and Senior Appellate Judge G. Alan Blackburn concur.*

DECIDED OCTOBER 19, 2010.

*LaMalva & Oeland, David A. LaMalva*, for appellant.
*Richard R. Read, District Attorney, Roberta A. Earnhardt, Assistant District Attorney*, for appellee.