**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN, P. J., and BROWN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**January 11, 2021**

# In the Court of Appeals of Georgia

A20A2111. STONE v. THE STATE.

BROWN, Judge.

Following a bench trial, Ronnie Antwan Stone was convicted of rape, aggravated child molestation, statutory rape, enticing a child for indecent purposes, and contributing to delinquency of a minor.[1] He appeals his convictions and the denial of his amended motion for new trial, contending that insufficient evidence supports his convictions for enticing a child for indecent purposes and aggravated child molestation. He further contends that the trial court failed to exercise its discretion to act as the "thirteenth juror" in ruling upon his amended motion for new

---

[1] The trial court found Stone not guilty of aggravated sexual battery and a second count of enticing a child for indecent purposes.

trial and that his convictions for rape and aggravated child molestation should have merged for sentencing purposes. We affirm.[2]

> On appeal from a bench trial resulting in a criminal conviction, we view all evidence in the light most favorable to the trial court's judgment of conviction, and the defendant no longer enjoys the presumption of innocence. We do not re-weigh testimony, determine witness credibility, or address assertions of conflicting evidence; our role is to determine whether the evidence presented is sufficient for a rational trier of fact to find guilt beyond a reasonable doubt.

(Citation and punctuation omitted.) *Mays v. State*, 306 Ga. App. 507 (703 SE2d 21) (2010). So viewed, the evidence presented at Stone's trial reflects that Stone was dating the older sister of 15-year-old N. T., and had come to her family's Christmas dinner in 2016. On the night of December 26, 2016, Stone messaged N. T. on Facebook, and the two struck up a conversation. At some point, Stone called N. T., and it was decided that she and her cousin, T. M., who was visiting for the holiday, would go to Stone's house. Stone sent an Uber to pick up the two girls, who then snuck out of N. T.'s house.

---

[2] We have circulated this decision among all nondisqualified judges of the Court to consider whether this case should be passed upon by all members of the Court. Fewer than the required number of judges, however, voted in favor of considering the case en banc.

At Stone's house, they watched a movie in his room, and N. T. smoked marijuana with Stone. T. M. then witnessed Stone and N. T. have sex before N. T. fell asleep.[3] After T. M. tried waking N. T., Stone forced T. M. into another room with a bed. T. M. testified that Stone left, and she sat on the bed, but he returned, laid her down, removed her panties, and spread her legs while she tried to push him away. While Stone raped her, she told him to stop, hit him, and yelled for help. Stone then made T. M. shower, she dressed, and the two drove to the store so Stone could get money for the girls' ride home. When they returned, N. T. told them her mom was on the way, and Stone left.

When N. T.'s mother realized the next morning that the two girls were not home, she called N. T., who was unsure where she was. Eventually, she learned that N. T. was at Stone's house, and N. T.'s sister took them to the location. N. T.'s mother called the police, who arrived at Stone's house and sent both N. T. and T. M. for sexual assault examinations.

---

[3] N. T. testified that she fell asleep on Stone's bed and awoke the next morning to her mother's phone calls, and that she did not remember if she had sex with Stone. N. T. testified that when she woke up the next morning, she was wearing clothing that was not her own, including men's boxers, and that her clothing was on a chair in Stone's bedroom. She also testified that she had been to Stone's house on a prior occasion, and they had kissed.

During N. T.'s sexual assault examination, she told the nurse that she had taken an Uber sent by Stone to his home where she smoked marijuana. She did not report any sexual activity with Stone and told the nurse that she may have fallen asleep. The nurse found no physical injuries, but observed redness during the vaginal exam leading her to conclude that it had some kind of recent irritation. The nurse took buccal, vaginal, and anal swabs from N. T.

During T. M.'s examination, she also told the nurse that they had taken an Uber to Stone's house where they went into his bedroom. At some point she was told to leave the room, but refused because she was afraid of the dogs in the house. She remained in the room, wearing headphones and playing on a tablet, but saw N. T. engaging in sexual activity with Stone. T. M. told the nurse that after N. T. fell asleep, Stone forced her into another room, pushed her onto a bed, pinned her arms over her head with one hand while he pulled down her pants with the other hand, and raped her. When T. M. began vaginally bleeding, Stone stopped, but then raped her a second time on the bed and inserted his fingers into her vagina. T. M. reported to the nurse that she had not had intercourse prior to this and was in pain. The nurse testified that she was "very tender during the external exam" and was in so much discomfort that she could not insert a speculum to complete an internal exam of the vagina. The

4

nurse took buccal and vaginal swabs from T. M. A GBI forensic biologist testified that an examination of the vaginal swabs from both victims revealed the presence of a partial YSTR DNA haplotype consistent with Stone.[4]

Stone was charged with rape (Count 1), aggravated sexual battery (Count 2), aggravated child molestation (Count 3), and enticing a child for indecent purposes (Count 4) in connection with T. M. He was charged with statutory rape (Count 5), enticing a child for indecent purposes (Count 6), and contributing to the delinquency of a minor (Count 7) in connection with N. T. During the bench trial, Stone testified in his defense and admitted having sex with both N. T. and T. M., but claimed it was consensual. He also testified that he had consensual sex with N. T. on the previous occasion she came to his house.

The trial court found Stone guilty of Counts 1, 3, 5, 6, and 7. The State consented to the trial court deviating from the mandatory minimum sentence applicable to Counts 1 and 3, see OCGA § 17-10-6.2 (c), and the court sentenced

---

[4] According to the forensic biologist's reports, which were admitted at trial, the YSTR haplotype recovered from the swab is not expected to occur more frequently than 1 in 2,083 male individuals in the African-American population and 1 in 2,488 male individuals in the Caucasian population.

5

Stone to life with 20 years in confinement. Stone filed a motion for new trial, and the trial court denied Stone's motion as amended. This appeal followed.

1. Stone contends that the evidence was insufficient to support his convictions for aggravated child molestation (Count 3) and enticing a child for indecent purposes (Count 6). We disagree.

(a) *Aggravated child molestation.* Count 3 of the indictment alleged that Stone committed aggravated child molestation in that he "did commit an immoral and indecent act with [T. M.], a child under the age of 16 years, with the intent to arouse and satisfy the sexual desires of said accused and said child by inserting his finger and penis into said child's vagina, said act causing injury to said child. . . ." Stone contends that the conjunctive language of the indictment required the State to prove that he inserted both his penis and his finger into T. M.'s vagina, and no evidence was presented showing he inserted his finger. This contention lacks merit.

> Where conjunctive pleadings set forth more than one act by which the accused committed the crime, the evidence is sufficient so long as it shows at least one of the acts alleged. If a crime may be committed in more than one way, it is sufficient for the [S]tate to show that it was committed in any one of the separate ways listed in the indictment, even if the indictment uses the conjunctive rather than disjunctive form.

6

(Citations and punctuation omitted.) *Riddick v. State*, 320 Ga. App. 500, 501 (1) (740 SE2d 244) (2013). Here, even assuming the State did not present evidence that Stone inserted his finger into T. M.'s vagina, evidence that Stone inserted his penis into T. M.'s vagina was sufficient to support the crime as charged in the indictment. See id. at 501 (1) (even without evidence that defendant placed finger in child's vagina, evidence that defendant touched the child's vagina was sufficient where indictment charged defendant with child molestation by "'touching the child's vagina and placing his finger in her vagina'"). See also *Wilson v. State*, 234 Ga. App. 375 (1) (506 SE2d 882) (1998).

(b) *Enticing a child for indecent purposes.* As to Count 6, the indictment pertinently alleged that Stone "did . . . solicit, entice and take [N. T.], a child under sixteen (16) years of age, to a place . . . for the purpose of indecent acts. . . ." "A person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts." OCGA § 16-6-5 (a).

> The crime of enticing a child for indecent purposes in violation of OCGA § 16-6-5 requires the showing of a joint operation of the act of enticing a child and the intention to commit acts of indecency or child molestation. Accordingly, neither the act of enticing a child without the

7

requisite intent nor the intent to commit acts of indecency or child molestation without the requisite act would constitute a crime under OCGA § 16-6-5.

(Citation and punctuation omitted.) *Clark v. State*, 323 Ga. App. 706, 708 (747 SE2d 705) (2013). Stone contends that the State presented insufficient evidence that he had the requisite intent to commit indecent acts at the time he was messaging N. T. However, the subsequent act of statutory rape is sufficient evidence that Stone intended to engage in sexual activity with N. T. when he told her to come over and then paid for and sent an Uber to N. T.'s house to bring her to him. See *Allison v. State*, 356 Ga. App. 256, 263 (2) (b) (846 SE2d 222) (2020) (defendant's subsequent actions of molesting victim were sufficient to establish that he acted with requisite intent at the time he enticed victim into bedroom); *Garza v. State*, 347 Ga. App. 335, 337 (1) (a) (819 SE2d 497) (2018) (subsequent act of molestation is evidence that defendant intended to molest the victim when he told her to go to a motel with him). Moreover, N. T. testified that on the previous occasion she went to Stone's house, they kissed. Stone himself testified that the last time N. T. came over, they had sex. We find, therefore, that there was sufficient evidence for the jury to find Stone guilty of this charge beyond a reasonable doubt.

2. Stone next contends that the trial court erred by failing to consider his amended motion for new trial on the "general grounds." Specifically, he contends that the court's order does not reflect that it evaluated the credibility of the witnesses and weighed the evidence in deciding whether to exercise its discretion to grant a new trial in its role as the "thirteenth juror." See OCGA §§ 5-5-20 and 5-5-21.

The order denying Stone's amended motion for new trial states as follows:

> Defendant's Motion for New Trial, as Amended, in the above-styled action came before the [c]ourt for hearing on November 1, 2019. The Defendant represented by [counsel], and having waived evidentiary hearing in this matter, his counsel submitted on briefs. The State announced that it would also submit the matter on briefs.

> Therefore, the [c]ourt having considered the motion, as amended, transcript, and all other matters of record, and having considered the applicable and controlling law, it is hereby ORDERED [t]hat Defendant's Motion for New Trial, as amended, is hereby DENIED.

While nothing in the order refers to the trial court's exercise of its discretion as the thirteenth juror, "[t]his Court presumes, in the absence of affirmative evidence to the contrary, that the trial court properly exercised its discretion pursuant to OCGA §§ 5-5-20 and 5-5-21." *Holmes v. State*, 306 Ga. 524, 528 (2) (832 SE2d 392) (2019). Thus, as here, "when a trial court enters an order denying a motion for new trial and,

9

without more, recites that the new trial is refused or denied, this will be taken to mean that the judge has in the exercise of his discretion approved the verdict." (Citation and punctuation omitted.) *Price v. State*, 305 Ga. 608, 613 (3) (825 SE2d 178) (2019) (rejecting appellant's claim that trial court erred by failing to consider his motion for new trial on the "general grounds" because nothing in trial court's order summarily denying defendant's motion for new trial suggested it did not properly exercise its discretion). Compare *Holmes*, 306 Ga. at 527-528 (2) (where trial court's order reflected that it had reviewed the motion for new trial only for legal sufficiency of the evidence, court failed to exercise its discretion). Accordingly, this claim is without merit.

3. Lastly, Stone argues that the trial court should have merged his convictions for rape (Count 1) and aggravated child molestation (Count 3). We conclude that the trial court properly did not merge these counts.

Count 1 of the indictment charged Stone with the offense of rape by having "carnal knowledge of [T. M.], a female, forcibly and against her will. . . ." Count 3 of the indictment charged Stone with committing aggravated child molestation in that he "did commit an immoral and indecent act with [T. M.], a child under the age of 16 years, with the intent to arouse and satisfy the sexual desires of said accused and said

10

child by inserting his finger and penis into said child's vagina, said act causing injury to said child. . . ."

Pursuant to OCGA § 16-1-7 (a),

[w]hen the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if: (1) One crime is included in the other; or (2) The crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.

A crime is included in the other, under OCGA § 16-1-6 (1), where "[i]t is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged." OCGA § 16-1-6 (1).[5] When making this determination, we apply the "required evidence" test adopted in *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006): "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the required evidence test considers whether each provision requires proof of a fact which the

---

[5] A crime is also included in the other where "[i]t differs from the crime charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission." OCGA § 16-1-6 (2).

11

other does not. If so, then there are two offenses, and neither is 'included in' the other." (Citation and punctuation omitted.) *Gaston v. State*, 317 Ga. App. 645, 650 (3) (731 SE2d 79) (2012).

> In applying the required evidence test[,] the important question is not the number of acts involved, or whether the crimes have overlapping elements, but whether, looking at the evidence required to prove each crime, one of the crimes was established by proof of the same or less than all the facts required to establish the commission of the other crime charged.

(Citation and punctuation omitted.) *Metcalf v. State*, 349 Ga. App. 408, 419 (2) (d) (825 SE2d 909) (2019).

Turning to the offenses at hand, "[a] person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will." OCGA § 16-6-1 (a) (1). Carnal knowledge is defined as "any penetration of the female sex organ by the male sex organ." OCGA § 16-6-1 (a). "A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy." OCGA § 16-6-4 (c). Child molestation is defined, in relevant part, as "any immoral or indecent act to or in the presence of or with any child under the age of 16 years

12

with the intent to arouse or satisfy the sexual desires of either the child or the person."

OCGA § 16-6-4 (a) (1). It follows that the offense of aggravated child molestation required proof of facts that the offense of rape did not: physical injury to the victim[6] and that the victim was under the age of 16. And, the offense of rape required proof of a fact that the offense of aggravated child molestation did not: lack of consent. Cf. *Tinson v. State*, 337 Ga. App. 83, 86 (2) (785 SE2d 914) (2016) (rape and incest convictions predicated on same act of penetration did not merge because State must prove lack of consent to establish crime of rape and must prove that victim was of certain relation to defendant to establish crime of incest).[7]

The case relied upon by Stone, *Lay v. State*, 264 Ga. App. 483 (591 SE2d 427) (2003), was decided prior to the Supreme Court's adoption of the required evidence test in *Drinkard*. In *Lay*, a panel of this Court held that a rape conviction merged with an aggravated child molestation conviction because they were based on one act of sexual intercourse and the physical injuries required to support the aggravated child molestation conviction occurred during the rape. Id. at 484 (2). To the extent that the

---

[6] There is no allegation of sodomy in this case.

[7] Nor do these counts merge under the other statutory provisions regarding merger. See *Metcalf*, 349 Ga. App. at 414-424 (2) (e), (g).

holding in *Lay* diverges from *Drinkard* and application of the required evidence test, it was impliedly overruled by the Supreme Court's decision in *Drinkard*. However, we take this opportunity to overrule *Barber v. State*, 283 Ga. App. 129, 130, n.2 (640 SE2d 696) (2006) (in reliance on *Lay*, holding that convictions for aggravated child molestation merge with convictions for rape because all arising from a single incident of sexual intercourse), decided two months after *Drinkard*, because it applied the wrong standard for merger.

*Judgment affirmed. Dillard, P. J., and Rickman, P. J., concur*.