S03A1042. STROZIER v. THE STATE.
(586 SE2d 309)

THOMPSON, Justice.

Following a jury trial, judgments of conviction were entered against Bobby Strozier for the felony murder of Dianne Mitchell with aggravated assault as the underlying felony, aggravated assaults on Derek Jones and Melody Bonner, and two counts of possession of a firearm during the commission of a felony.[1] On appeal, Strozier submits, inter alia, that the trial court was without authority to preside over the trial, that the court erred in denying his motion to sever his trial from that of co-defendant Darrick Hubbard, as well as refusing to grant a severance of offenses, and that he was denied effective assistance of trial counsel. Finding no error, we affirm.

This night-long crime spree began at about 10:00 p.m. when Strozier, co-defendant Hubbard,[2] and a man identified as Barry B, all of whom were armed, gained entry to the home of Derek Jones and Melody Bonner. Several others were visiting the apartment at the time. Barry held two of the occupants of the apartment at gunpoint

---

[1] The crimes took place on October 18 and 19, 1997. On August 24, 1999, Strozier and co-defendant Darrick Hubbard were charged in an 18-count indictment with malice murder, felony murder while in the commission of an aggravated assault, aggravated assault (nine counts), armed robbery (three counts), possession of a firearm during the commission of a felony (two counts), and possession of a firearm by a convicted felon. Prior to trial, the State dead-docketed three counts of aggravated assault, two counts of armed robbery, and the last two weapons offenses. After trial held on October 20 to 26, 1999, Strozier was acquitted of malice murder, and one count of aggravated assault; he was found guilty of the remaining offenses. He was sentenced to life imprisonment for felony murder, plus consecutive terms. Strozier filed a motion for new trial on November 17, 1999, and amended it on July 30, 2002. On September 5, 2002, Strozier was granted a new trial in part as to three counts of aggravated assault due to a defective jury instruction, and those counts were placed on the dead-docket. His sentence was modified to life imprisonment for felony murder; plus ten consecutive years for the aggravated assault of Derek Jones; a consecutive term of five years for the aggravated assault of Melody Bonner; and two consecutive five-year terms for the weapons possession offenses. The conviction for aggravated assault on the murder victim was merged by operation of fact. A timely notice of appeal was filed; the case was docketed in this Court on April 22, 2003, and oral argument was heard on June 10, 2003.

[2] Hubbard's conviction was affirmed on appeal to this Court. *Hubbard v. State*, 275 Ga. 610 (571 SE2d 351) (2002).

in the living room. Strozier and Hubbard went to the back of the apartment and ordered Jones and Bonner out of a closet where they were hiding, and brought them into the living room at gunpoint. In the process, Strozier hit Jones in the head with his pistol. The intruders demanded money from the victims and threatened to shoot them. Jones managed to escape through a window as Strozier fired several shots at him, grazing his arm.

In the early morning hours, Strozier, Hubbard, and Barry drove to a crack house owned by Charles Spikes. Later, Katrina Gemes arrived at the house. Hubbard accused Gemes of being a "snitch" while he beat her repeatedly with his pistol. Hubbard told Strozier that he intended to kill Gemes and he instructed Strozier to guard her. Strozier complied by cocking his weapon and holding her at gunpoint. Meanwhile, Spikes went out in search of women and he returned with Dianne Mitchell. Mitchell had sex with two of the men in exchange for cocaine. Then Strozier went into the bedroom, ordered Mitchell at gunpoint to perform oral sex, and threatened to shoot her if she failed to comply. Strozier and Hubbard debated as to whose turn it was to kill someone; whereupon, Hubbard shot Mitchell. She bled to death later that morning from a gunshot wound to the lower abdomen.

1. Strozier contends that the judgments of conviction are void because the order appointing the senior judge who presided over the trial was insufficient under OCGA § 15-1-9.2 (b).[3]

Strozier's claim of the insufficiency of the judge's appointment was not asserted until the motion for new trial. It is, therefore, untimely and presents nothing for review. *Hurst v. State*, 260 Ga. App. 708 (2) (580 SE2d 666) (2003).

2. Strozier asserts that the evidence shows only his "mere presence" during the commission of the underlying aggravated assault on the murder victim, and thus the evidence was insufficient to support his conviction of felony murder.[4] "While mere presence at the scene of a crime is not sufficient evidence to convict one of being a party to a crime, criminal intent may be inferred from presence, companionship, and conduct before, during and after the offense." *Belsar v.*

---

[3] That Code section permits the chief judge of the superior court to request the assistance of a senior judge if:
(1) [a] judge of the requesting court is disqualified . . . in any matter pending before the court; (2) [a] judge of the requesting court is unable to preside because of disability, illness, or absence; or (3) [a] majority of the judges of the requesting court determines that the business of the court requires the temporary assistance of an additional judge . . . as provided for in [OCGA §] 15-1-9.1.

[4] He also argues that he did not participate in an aggravated assault on Gemes; however, the record reveals that Count 16 of the indictment charging the crime against Gemes was dead-docketed after trial and no judgment of conviction was entered against Strozier.

*State*, 276 Ga. 261, 262 (1) (577 SE2d 569) (2003).

The evidence showed that Strozier actively participated in the aggravated assault on Mitchell by holding her at gunpoint and threatening to kill her. His debate with Hubbard as to whose turn it was to shoot someone (not whether Mitchell would be shot) does not support Strozier's theory that he renounced any purpose to shoot Mitchell. The jury found Strozier guilty of felony murder after receiving proper instructions that mere presence at the scene of a crime is insufficient to convict unless the evidence showed beyond a reasonable doubt that the defendant committed the alleged crime, or helped or participated in the criminal endeavor. It follows that Strozier's mere presence argument is wholly without merit. See *Peppers v. State*, 242 Ga. App. 416 (1) (530 SE2d 34) (2000).

3. Strozier also asserts that the trial court erred in failing to direct a verdict of acquittal as to the charge of aggravated assault on Derek Jones, because the indictment incorrectly named the victim "Derek John."

First, while Strozier moved for a directed verdict of acquittal as to several counts of the indictment, the aggravated assault on Derek Jones was not among those asserted. Moreover, a claim that an indictment improperly identifies the victim is a challenge to the form of the indictment, *Mooney v. State*, 250 Ga. App. 13, 14 (550 SE2d 421) (2001), and it has long been held that if the charging instrument is void for any reason, the challenge "should have been raised by demurrer before pleading to the merits, or by motion in arrest of judgment after conviction." *Rucker v. State*, 114 Ga. 13, 14 (1) (39 SE 902) (1901). This was not done. It follows that Strozier has not preserved this issue for review. Id.

Even if the issue were properly before this Court, no error has been shown. "A variance between the victim's name as alleged in the indictment and as proven at trial is not fatal if the two names in fact refer to the same individual, such as where a mere misnomer is involved." (Citation and punctuation omitted.) *Parks v. State*, 246 Ga. App. 888, 889 (543 SE2d 39) (2000). All testimony proved that Strozier shot at Derek Jones, hitting him in the arm, as he jumped out of a window trying to escape. The investigating officer confirmed that the victim was known to him as Derek Jones. It is clear that the two names referred to the same individual.

4. The evidence was sufficient to enable a rational trier of fact to find Strozier guilty beyond a reasonable doubt of all the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

5. Strozier asserts that the trial court erred in denying his motions to sever for trial the crimes that occurred at the apartment of Jones and Bonner from those that occurred at the crack house, and

to sever his trial from that of co-defendant Hubbard.

(a) The former contention was decided in favor of the State in *Hubbard*, supra at 611 (2), in which we determined that "the offenses were part of a continuing course of conduct and were all part of a single 'crime spree,'" id., and that the trial court did not abuse its discretion in denying a severance of offenses. See also *Bland v. State*, 264 Ga. 610 (1) (449 SE2d 116) (1994). In ruling on a severance of offenses, "[t]he court should consider whether, in light of the number of offenses charged and the complexity of the evidence, the fact-trier will be able to distinguish the evidence and apply the law intelligently to each offense." *Smith v. State*, 186 Ga. App. 303, 307 (2) (367 SE2d 573) (1988). There is no question that the jurors were able to make that distinction since Strozier was acquitted of two counts. Our ruling in *Hubbard*, supra at 611 (2), is dispositive.

(b) As for a severance of defendants, Strozier asserts that the evidence against Hubbard was so overwhelming compared to the amount of evidence against him, that it had a spillover effect on the jury. "However, the fact that the evidence as to one of two co-defendants is stronger does not demand a finding that the denial of a severance motion is an abuse of discretion, where there is evidence showing that the defendants acted in concert." *Head v. State*, 256 Ga. App. 624, 627 (1) (d) (569 SE2d 548) (2002).

Strozier concedes that he acted in concert with Hubbard at the Jones/Bonner apartment, but he argues that the acts at the crack house were those of other individuals. As noted previously, the evidence shows that Strozier directly participated in the underlying aggravated assault on the murder victim. It follows that the trial court did not abuse its discretion in refusing to sever his trial from co-defendant Hubbard. Id.

6. Prior to the commencement of voir dire, Strozier complained that four prospective jurors entered the courtroom early and may have seen him in jail clothes, and that he was therefore entitled to a new panel of jurors. However, upon inquiry by the court, all four jurors stated that they had not seen or noticed anyone in the courtroom other than the judge, and that they had not noticed any person in the courtroom dressed in bright clothing. Each juror reported that he or she could reach a fair and impartial decision. Under the circumstances, there was no prejudice to the defendant. Even if the four jurors were subject to dismissal, the inclusion of a juror within a panel who is disqualified to serve does not vitiate the entire panel; the proper remedy is a challenge for cause, not to the panel. *Taylor v. State*, 121 Ga. 348 (49 SE 303) (1904). See generally *Fields v. State*, 190 Ga. 642 (2) (10 SE2d 33) (1940); *Coates v. State*, 165 Ga. 191 (140 SE 287) (1927); *Newby v. State*, 161 Ga. App. 805 (4) (288 SE2d 889) (1982).

7. In addition, Strozier complains that the trial court erred in failing to hold a full hearing to inquire into juror bias after a bystander reported that he overheard one potential juror say to another, "If I have to sit on a jury, somebody is going to jail." However, the defense did not request an examination of the panel; it merely renewed its motion to disqualify the entire panel. Nonetheless, all potential jurors were thereafter subject to voir dire proceedings, during which it was established that none of the jurors held a fixed opinion regarding the defendant's guilt or innocence and all jurors stated that they could be fair and impartial in deciding the case. The trial court did not abuse its discretion in failing to disqualify the entire panel. *Taylor*, supra.

8. Finally, Strozier submits that he was denied effective assistance of trial counsel due to counsel's failure to object to the appointment of the trial judge. In order to prevail on a claim of ineffective assistance of trial counsel, a defendant must show that his trial counsel's performance fell below an objective standard of reasonableness, and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Doctor v. State*, 275 Ga. 612 (5) (571 SE2d 347) (2002). Strozier has not shown that he was denied a fair trial by virtue of the appointment order. It follows that he has not satisfied the prejudice prong of *Strickland*.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 15, 2003.

*Charles H. Frier*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Marc A. Mallon, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Jennifer S. Gill, Assistant Attorney General*, for appellee.