## A06A1085. JORDAN v. THE STATE.
### (636 SE2d 151)

MIKELL, Judge.

Following a jury trial, Erin Monet Jordan and four co-defendants were convicted of armed robbery and two counts of aggravated assault. Jordan was acquitted of a third charge of aggravated assault, and one charge each of kidnapping with bodily injury and criminal damage to property in the second degree. One count of fleeing or attempting to elude an officer and a fourth charge of aggravated assault were nolle prossed by the state, and the trial court directed a verdict on one count of theft by receiving stolen property. Jordan was given three concurrent fifteen-year sentences. On appeal, she argues that the trial court erred by denying her motion to sever and her motion for directed verdict of acquittal. Finding no error, we affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and an appellant no longer enjoys the presumption of innocence. This court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia* and does not weigh the evidence or determine witness credibility. Conflicts in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the state's case, we must uphold the jury's verdict.[1]

"This test applies when the sufficiency of the evidence is challenged, whether the challenge arises from the denial of a motion for directed verdict or the denial of a motion for new trial."[2] Viewed in this light, the evidence shows that at approximately 3:00 p.m. on March 31, 2003, Fania Glenn, Lee Booth, and Wade Doering were working at the Zales jewelry store at the Tanger II outlet mall in Jackson County, when four masked men, carrying at least one gun and two hammers, walked in, threatened to kill the employees and customers, and

---

[1] (Footnotes omitted.) *Robinson v. State,* 259 Ga. App. 555 (578 SE2d 214) (2003).

[2] (Punctuation and footnote omitted.) *Kirk v. State,* 271 Ga. App. 640, 641 (1) (610 SE2d 604) (2005).

ordered them to "[g]et down." One of the men pointed a gun directly at Doering, while another put a gun to Glenn's head, pulled her up from the floor, and then hit and kicked her as he dragged her to the store's safe and ordered her to open it. After Glenn opened the safe, she got back down on the floor. The perpetrators stole the contents of the safe, smashed the glass display cases with a hammer, and then left with approximately $423,000 worth of merchandise. Doering called 911 and reported the incident, along with a description of the getaway vehicle, with the tag number 6239 AMY, as relayed to him by the manager of a neighboring store. None of the victims could identify the perpetrators, but Doering testified that two were male and that one was a black male. A surveillance tape of the incident was played for the jury.

Delores Cochran and Charline Smith testified that they were shopping in Zales when at least three people burst into the store shouting profanities, ordering everyone to get down, and threatening to "[s]hoot the bitch." Smith testified that one of the men was wearing a ski mask and brandishing a gun. After both women dropped to the floor, they heard what sounded like gunshots and then one man pushed Cochran's head to the ground and another hit Smith in the head with a chair. Both women cut themselves on the shattered glass from the display cases. Neither woman saw the perpetrators' faces, but Cochran noticed that one of the perpetrators was wearing a blue-gray nylon jacket.

Timothy Cameron testified that on the afternoon of March 31, 2003, he was shopping next door to Zales at Wilson's Sports Shop when he heard banging on the wall. As Cameron and Brad James, Wilson's manager, exited the store, Cameron observed three or four individuals run out of Zales. One of the men pointed a pistol at Cameron and said, "turn the f___ around." Both Cameron and James complied. As the men fled, James was able to get their tag number.

Patricia Medlin, Cochran's sister, was waiting for her in the Zales' parking lot when she saw three masked men with their arms full of "black things" running out of the store. The men sped off in a silver-gray car, followed by another car. Karyn Martin, another witness, was sitting in her car in the mall parking lot when she noticed a four-door sedan occupied by "suspicious" people. One of the passengers was wearing a hooded sweatshirt and another was lying down in the back seat. Martin saw the car speed out of the parking lot, followed by a dark green, older model Camry with tinted windows.

Joshua McIntyre testified that he was leaving Zales when he saw four black men wearing ski masks exit a gray or silver Buick parked in front of the store. McIntyre ran to his truck and called 911. He

observed the men in Zales and then watched them exit the store with bags and get back into the Buick. The Buick sped away followed by a dark car.

Tim Keefe, a deputy with the Jackson County Sheriff's Department, testified that at approximately 3:00 p.m. on March 31, 2003, he was dispatched to an armed robbery at Zales and told to be on the lookout for a gray Buick, tag number 6239 AMY. On the way to the scene, Keefe observed a black Toyota Camry run a stop sign at the intersection of Yarbrough and Ridgeway Road at a "high rate of speed." Keefe did not pursue the Camry. Approximately one and one-half miles from the Camry sighting, Keefe observed an abandoned gray Buick with its doors open and engine running, with a tag number of 6239 AMY. Keefe observed jewelry cases on the ground in front of the car, and a mask and pair of gloves in the grass on the opposite side of the road. After securing the Buick, Keefe called in a be on the lookout (BOLO) for a black Camry with chrome wheels. Keefe then proceeded to Zales where he secured that scene and waited for investigators.

Major David Cochran, and deputies Edmon Dempsey and Charlie Timms of the Jackson County Sheriff's Department, testified that they were traveling northbound on Interstate 85, en route to Zales, when they heard Cochran's BOLO and noticed a black Toyota Camry with chrome wheels traveling southbound on Interstate 85. Dempsey and Timms activated their blue lights and sirens and followed the Camry which drove erratically for several miles until the officers stopped it using a "rolling road block." As the vehicle stopped a black male jumped from the front passenger seat and ran. Timms and two other officers gave chase, apprehending the man in woods 500 yards from the stopped Camry. The man was later identified as Chad Harper. At the time of his arrest Harper was wearing a green, hooded warmup jacket. Officers also arrested the remaining occupants of the Camry, including Jordan, the driver and registered owner of the vehicle, and her co-defendants Deon Reid, Andre Traylor and Kelvin Williams. Both Reid and Williams were wearing gray, hooded sweatshirts/warmup jackets. Officers recovered various items from the vehicle, including a black bag containing jewelry and glass fragments, a plastic glove, knit caps, a hooded gray and black jacket, a ski mask, jewelry, and a crowbar. Officers also recovered a black glove and a second black bag containing jewelry outside the vehicle, and a loaded pistol from the glove compartment. At trial, Cochran identified all five defendants as the individuals arrested at or near the Camry, and acknowledged that upon closer inspection the Camry was dark green as opposed to black.

According to Zales' regional loss prevention manager, officers recovered all of the stolen merchandise.

Neither Jordan nor her co-defendants testified at trial.

1. Jordan contends that the trial court erred in denying her motion for a directed verdict of acquittal because she was merely an accessory after the fact and the evidence showed only that she innocently picked up the robbers after the crimes occurred. We disagree.

A participant to a crime may be convicted although he is not the person who directly commits the crime. A person who intentionally aids or abets in the commission of a crime or intentionally advises, encourages, hires, counsels or procures another to commit the crime may be convicted of the crime as a party to the crime. Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct before, during, and *after* the commission of a crime.[3]

Pursuant to OCGA § 16-2-21, "[a]ny party to a crime who did not directly commit the crime may be indicted, tried, convicted, and punished for commission of the crime upon proof that the crime was committed and that he was a party thereto." Whether Jordan was a party to the crimes and aided and abetted her co-defendants or intentionally advised, encouraged, or counseled them to commit the crimes is a jury question.[4] Here, the record contains evidence from which a jury could find that Jordan waited at the scene of the robbery and then assisted in the attempted escape, and thus, was a party to the crimes.[5] Medlin, Martin and McIntyre observed the four robbers leave the Zales' parking lot in a silver-gray Buick immediately followed by a black Camry. The men abandoned the Buick a short time later and jumped into the black Camry which sped past Keefe. Officers pursued the black Camry as it drove erratically on the highway and finally stopped it using a rolling road block. At trial, Jordan was identified as the driver and owner of the black Camry. All of the stolen merchandise was found in and around her vehicle. Jordan's presence at the scene of the crime and her behavior after the crime were sufficient to support the jury's verdict against her as a

---

[3] (Footnote omitted; emphasis supplied.) *Buruca v. State*, 278 Ga. App. 650, 652 (1) (629 SE2d 438) (2006). See OCGA § 16-2-20.

[4] See *Buruca*, supra.

[5] See, e.g., id.; *Head v. State*, 261 Ga. App. 185, 187 (1) (582 SE2d 164) (2003); *Parnell v. State*, 260 Ga. App. 213, 219-220 (6) (581 SE2d 263) (2003); *Oakes v. State*, 233 Ga. App. 684, 685-686 (1) (505 SE2d 33) (1998); *Cantrell v. State*, 230 Ga. App. 693, 695 (1) (498 SE2d 90) (1998). But see *Grant v. State*, 227 Ga. App. 243 (488 SE2d 763) (1997).

party to the crimes. Accordingly, the trial court did not err by denying her motion for a directed verdict of acquittal.

We also reject Jordan's claim that the state failed to exclude every reasonable hypothesis except guilt as required by OCGA § 24-4-6.

> To support a verdict, circumstantial evidence need exclude only reasonable hypotheses, not exclude every inference or hypothesis except that of the defendant's guilt. Whether circumstances were sufficient in this case to exclude every reasonable hypothesis except that of defendant's guilt was a question for the jury. It is only when the evidence is insupportable as a matter of law that the jury's verdict may be disturbed, even where the evidence is entirely circumstantial.[6]

In this case, the jury was instructed on circumstantial evidence, mere presence at the scene of a crime, and mere association with others committing a crime. The jury also heard and clearly rejected Jordan's claim that she had no knowledge of the robbery and was innocently driving the four robbers in her vehicle. Although circumstantial, the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Jordan was the "getaway" driver for the robbers and, thus, was a party to the charged offenses.

2. Jordan contends that the trial court erred by failing to sever her trial from her four co-defendants' case because of the spillover effect of the overwhelming and damning evidence against them versus the minimal evidence against her. We disagree.

> When the death penalty is not sought, the severance of defendants' trials is within the sound discretion of the trial court and its decision will not be disturbed unless there is an abuse of that discretion. OCGA § 17-8-4. The burden is on the defendant moving for severance to demonstrate more than the possibility that a separate trial would provide him with a better chance of acquittal; he must establish a clear showing of prejudice.[7]

In exercising its discretion, the trial court must consider the following factors: (1) whether the number of defendants creates confusion as to the law and evidence to be applied to each; (2) whether a danger exists that evidence admissible against one defendant might be considered

---

[6] (Footnote omitted.) *Brown v. State*, 267 Ga. App. 642, 645 (1) (600 SE2d 731) (2004).

[7] (Citation and footnote omitted.) *Moore v. State*, 261 Ga. App. 752, 753 (1) (583 SE2d 588) (2003). See also *Rust v. State*, 264 Ga. App. 893, 898 (2) (592 SE2d 525) (2003).

against the other notwithstanding instructions to the contrary; and (3) whether the defenses are antagonistic to each other or each other's rights.[8]

Jordan has offered no evidence that the jurors were confused, that the defendants' defenses were antagonistic to each other, or that evidence admitted against her co-defendants was improperly considered against her. Contrary to Jordan's claim that the evidence against her was minimal, two witnesses placed her vehicle at the scene of the robbery and speeding away from the scene; within minutes of the robbery, Keefe observed Jordan's vehicle in the vicinity of Zales, traveling at a high rate of speed; Timms and Dempsey observed her vehicle speeding and driving erratically on Interstate 85; and Jordan was in the presence of all four co-defendants and the stolen jewelry when officers finally stopped her vehicle.[9]

Furthermore, Jordan has not shown that the failure to sever the trials precluded a fair determination of her guilt or innocence.[10] Indeed, the jury acquitted Jordan of kidnapping with bodily injury and aggravated assault of Glenn, indicating the ability to decide each case separately. Accordingly, we find that the trial court did not abuse its discretion when it denied Jordan's motion to sever.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED SEPTEMBER 1, 2006.

*Mary Erickson*, for appellant.
*Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellee.

---

[8] See *Robinson*, supra at 557 (1).

[9] See, e.g., *Parnell*, supra at 218-220 (5), (6) (affirming denial of motion to sever getaway driver's case from co-defendants' case). But see *Price v. State*, 155 Ga. App. 844, 845 (1) (273 SE2d 225) (1980) (reversing denial of motion to sever where little or no evidence connected defendant to robbery and overwhelming evidence, i.e., five witness identifications, connected co-defendant to robbery).

[10] See *Moore*, supra at 754 (1), citing *Ledbetter v. State*, 202 Ga. App. 524, 525 (2) (414 SE2d 737) (1992).