## A12A0574. JONES v. THE STATE.
### (727 SE2d 216)

ELLINGTON, Chief Judge.

A Chatham County jury found Robert Lee Jones guilty of impersonating a police officer, OCGA § 16-10-23; burglary, OCGA § 16-7-1 (a); and armed robbery, OCGA § 16-8-41 (a). He appeals from the denial of his motion for new trial, contending that the evidence was insufficient to support his convictions, that the trial court abused its discretion in denying his motion to sever, and that he received ineffective assistance of counsel at trial. Finding no error, we affirm.

1. Jones contends that the evidence was insufficient to support his convictions, arguing that there was no direct evidence of his participation in the crimes and that the remaining evidence was purely circumstantial and did not eliminate the possibility that someone else had committed the crimes.

When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). It is the function of the jury, not this

Court, to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. Id.

To warrant a conviction based solely on circumstantial evidence, "the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6.

> In order to support a conviction, [however,] such circumstantial evidence does not have to exclude *every* possible hypothesis other than the defendant's guilt, but only *reasonable* hypotheses. Whether a hypothesis is reasonable is a question for the jury, and such finding will not be disturbed on appeal unless the guilty verdict is insupportable as a matter of law.

(Citations omitted; emphasis in original.) *Eberhart v. State*, 241 Ga. App. 164, 165 (1) (526 SE2d 361) (1999). Ultimately, "[a]s long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001). Viewed in this light, the record reveals the following facts.

On the morning of May 31, 2008, a man entered a Chatham County supermarket, approached the owner, and identified himself as "Detective John," a police officer who was investigating a "drug-related case." According to the owner, the man was wearing a dark-colored jacket and glasses "just like an undercover policeman," and was carrying a black briefcase. The man said that he wanted to talk to the owner in the store's office and, once they were inside the office, the man (hereinafter, "the robber") closed the door, opened his briefcase, and pulled out a handgun. The robber forced the owner at gunpoint to walk to the store's counter, open a safe, and give him all of the money that was inside. The robber then forced the owner back into the office, where he made the owner lie down, told him not to move, and took all of the cash from the owner's wallet. The robber threatened to kill the owner if he moved, then ran out of the store. The owner grabbed a handgun out of an office drawer and ran outside to stop the robber. The owner saw the robber running toward the passenger side of a white Ford Explorer SUV that was parked on a side street and saw another man standing near the driver's side door. The owner started running after and shooting at the men, who abandoned the SUV and escaped on foot. A store employee called 911, and police investigators found three shell casings from the owner's gun in the side street. After photographing and attempting to lift

fingerprints from the outside of the SUV, the officers impounded the SUV and obtained a search warrant for it.

In the meantime, shortly after the supermarket armed robbery, a couple who lived a few blocks away from the supermarket saw two men walking across a vacant lot behind their house and toward their back door. According to the wife, the men appeared to be police officers, because one of them was wearing a jacket with what appeared to be a metal badge. While one of the men kneeled down near a shed in the couple's back yard, the other man approached the home's back door and pushed his way inside the house. The intruder was wearing a blue jacket and dark trousers. After realizing that the intruder was not a police officer, the wife ran out the front door and flagged down a police patrol car that was passing by. Then, upon hearing sirens from nearby police patrol cars, the husband walked out the back door and, after the intruder followed him, the husband ran back inside and locked the intruder out of the house.

While searching the area around the couple's home, a police officer found a black leather badge holder on the ground in a lane that ran between the home and a vacant lot. Officers also found a bandana and a BB pistol that was shaped like a handgun in the vacant lot behind the couple's home. In addition, investigators found a briefcase near the shed, a pair of sunglasses in the back yard, and an abandoned dark blue jacket on some trash cans near the house.

During the search of the robber's SUV that had been seized after the supermarket armed robbery, officers found two identification cards for "Robert Jones," mail addressed to "Shamia Hamilton," and a receipt for a bandana that had been purchased at a local Walmart store at 8:09 a.m. on the day of the crimes. The officers interviewed Hamilton, who later admitted at trial that she was a friend of the defendant in this case and that he was driving a white SUV on the day of the crimes. A detective and other police officers executed a search warrant for Hamilton's residence on June 1, the day after the crimes occurred.

Upon entering Hamilton's residence, the officers found the defendant sitting on a couch, nursing injuries to his foot that were consistent with a gunshot wound. The keys to the robber's SUV were on the floor near the defendant. Among the other items found by the officers inside the residence were a pair of Nike sneakers with blood on the right shoe, income tax forms for "Robert Jones," a torn up social security card bearing the name "Israel Jones," an empty plastic package for a badge holder, and a Spring 2008 issue of *Quartermaster* magazine, from which law enforcement equipment may be ordered, that was addressed to "Israel Jones" at an Atlanta address. The officers arrested the defendant, and, because the evidence found in

Hamilton's residence also implicated Israel Jones[1] in the crimes, they arrested him in Atlanta a few days later.

The supermarket owner subsequently identified Israel Jones from a photographic lineup, and again at trial, as the armed robber who had claimed to be "Detective John"; he was unable, however, to identify the man who had been waiting by the SUV and who had fled with the robber. The man who had been the victim of the home invasion, however, identified both Israel Jones and the defendant from separate photographic lineups as the man who had forcibly entered his home and as the man who had waited by the shed, respectively.

The State jointly indicted and tried the defendant and Israel Jones for the crimes committed at the supermarket and at the couple's home,[2] and argued to the jury that, while Israel Jones was the principal actor in both incidents, the evidence showed that the defendant was guilty as a party to the crimes.[3] As shown above, this argument was supported by evidence establishing the defendant's active involvement in aiding and abetting Israel Jones before, during and after the crimes, including evidence that the defendant drove Israel Jones to the supermarket in his SUV; that he waited by the SUV during the crimes with the intention of using it as a getaway car; that the pair ran away from the supermarket together; that he waited near the shed in the couple's back yard while Israel Jones forced his way into the house; that a briefcase matching the one used during the supermarket armed robbery was found next to the shed; that the pair again fled together when they heard police sirens nearby; and that, shortly after the crimes were committed, he was found with an

---

[1] The defendant and Israel Jones are not related to one another.

[2] The jury found both co-defendants not guilty of the burglary charge that arose from the home invasion.

[3] Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime. . . . A person is concerned in the commission of a crime only if he: (1) Directly commits the crime; (2) Intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity; (3) Intentionally aids or abets in the commission of the crime; or (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime. OCGA § 16-2-20. If the defendant is not the actual perpetrator of the crime, his mere presence at the scene of the crime is not sufficient evidence to establish that he was a party to the crime. *Pruitt v. State*, 282 Ga. 30, 32 (1) (644 SE2d 837) (2007). Instead, the State must show that the defendant shared a common criminal intent with the actual perpetrator, a fact which the jury may infer from evidence of the defendant's conduct before, during, and after the crimes. Id.

In this case, the trial court instructed the jury on parties to a crime.

apparent gunshot wound to his foot in a residence that contained property belonging to him, as well as to Israel Jones.

Given this substantial, albeit circumstantial, evidence of the defendant's active participation in the crimes that occurred at the supermarket before, during and after they were committed, the jury was authorized to conclude that he was guilty beyond a reasonable doubt as a party to those crimes. See *Jordan v. State*, 281 Ga. App. 419, 422-423 (1) (636 SE2d 151) (2006) (evidence that the defendant waited at the scene during the armed robbery of a jewelry store and then drove the getaway car, in which the stolen jewelry, a loaded pistol, and substantial other evidence from the crime were found when the car was stopped by the police, was sufficient to support the jury's conclusion that she was guilty of the armed robbery as a party to the crime).

2. Jones argues that the trial court abused its discretion in denying his motion to sever his trial from that of his co-defendant, Israel Jones. We disagree.

> When the death penalty is not sought, the severance of defendants' trials is within the sound discretion of the trial court and its decision will not be disturbed unless there is an abuse of that discretion. OCGA § 17-8-4. The burden is on the defendant moving for severance to demonstrate more than the possibility that a separate trial would provide him with a better chance of acquittal; he must establish a clear showing of prejudice. In exercising its discretion, the trial court must consider the following factors: (1) whether the number of defendants creates confusion as to the law and evidence to be applied to each; (2) whether a danger exists that evidence admissible against one defendant might be considered against the other notwithstanding instructions to the contrary; and (3) whether the defenses are antagonistic to each other or each other's rights.

(Punctuation and footnotes omitted.) *Jordan v. State*, 281 Ga. App. at 423-424 (2). See also *Harper v. State*, 300 Ga. App. 757, 769 (12) (686 SE2d 375) (2009) ("[T]he exercise of a trial court's discretion in denying a motion to sever will not be disturbed on appeal unless the defendant clearly demonstrates that he suffered prejudice by one or more of the above factors amounting to a denial of due process.") (punctuation and footnote omitted).

In this case, the defendant has failed to show that the evidence may have been confusing to the jurors, especially when there were

only two co-defendants and when the eyewitnesses specifically identified Israel Jones as the principal actor in both the armed robbery and the home intrusion.[4] Further, he has failed to show that his defenses were antagonistic to those of his co-defendant or that there was any evidence introduced at the joint trial that could not have been introduced against him in a separate trial. See *Diaz v. State*, 280 Ga. App. 413, 416 (634 SE2d 160) (2006) (even though the co-defendants' defenses were antagonistic, severance of the trial was not required, because the charged offenses were a series of continuous acts, there was no likelihood of confusion, and the defendant failed to show he was harmed by the introduction of evidence that would have been admissible against him in a separate trial). In addition, as shown in Division 1, supra, there was overwhelming evidence of the defendant's active participation in the crimes. Accordingly, we find that the trial court did not abuse its discretion when it denied his motion to sever. *Jordan v. State*, 281 Ga. App. at 424 (2); see *Character v. State*, 285 Ga. 112, 118 (5) (674 SE2d 280) (2009) (even if the jury heard evidence that was only relevant to the guilt of the appellant's co-defendants, any error in denying his motion to sever was harmless considering the overwhelming evidence that the appellant participated as a party to the crimes in question).

3. Jones contends that his trial counsel provided ineffective assistance when he failed to present any evidence in support of an alibi defense. This claim lacks merit.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003). See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

---

[4] Although the defendant argues on appeal that the jurors may have been confused because both defendants were black males and both had the last name of Jones, he failed to raise this argument in the court below. Accordingly, it was waived. See *Williams v. State*, 277 Ga. App. 106, 108 (2) (625 SE2d 509) (2005) (This Court does not consider issues or grounds for objection that were not raised and ruled upon in the trial court.).

"As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Citation and punctuation omitted.) *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001). "The decisions on which witnesses to call and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with his client." (Citation and punctuation omitted.) *Moreland v. State*, 263 Ga. App. 585, 588 (4) (588 SE2d 785) (2003). Ultimately, "[d]eciding what evidence to present or to forego in defending a client charged with a crime is a matter of strategy and tactics." (Citation omitted.) *Nichols v. State*, 281 Ga. 483, 485 (2) (a) (640 SE2d 40) (2007). "Whether an attorney's trial tactics [were] reasonable is a question of law, not fact." (Citation and punctuation omitted.) *Moreland v. State*, 263 Ga. App. at 588 (4). When assessing the reasonableness of counsel's actions, courts must evaluate counsel's performance from his or her perspective at the time of trial. *Grier v. State*, 273 Ga. at 365 (4).

Finally, when this Court reviews a trial court's ruling on an ineffective assistance claim on appeal, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Robinson v. State*, 277 Ga. at 76.

In this case, the record shows that, at the hearing on the motion for new trial, trial counsel testified that the defendant had told him before trial that, although he had parked his car near the supermarket, he had left the area and loaned his car to someone else before the armed robbery took place. According to counsel, he investigated the defendant's story and even subpoenaed some witnesses for trial, but he realized before trial that none of the witnesses were able to provide an alibi for the defendant for the actual time period during which the crimes took place, and he was unable to find any other evidence that supported the defendant's alibi. Moreover, during the motion for new trial hearing, the defendant failed to present any evidence in support of his alibi or to proffer the testimony of any of the alibi witnesses he now claims were available to testify on his behalf at trial.

Therefore, without an affirmative showing that evidence supporting his alibi defense existed before trial and that a negligent oversight by counsel (as opposed to a strategic decision by counsel) prevented it from being presented to the jury, "it is impossible for [the defendant] to show there is a reasonable probability the results of the [trial] would have been different. Absent the required proffer, it cannot possibly be said that the additional witnesses would have testified favorably to [the defendant]." (Citations and punctuation omitted.) *McRae v. State*, 289 Ga. App. 418, 420 (2) (657 SE2d 323) (2008). See also *Rouse v. State*, 295 Ga. App. 61, 65 (2) (670 SE2d 869)

(2008) (The defendant failed to present any admissible evidence regarding what his alleged alibi witness would have said if counsel had called her to testify at trial. Thus, he failed to demonstrate that the testimony would have been favorable to his defense and that, as a result, there was a reasonable likelihood the testimony would have changed the outcome of his trial.).

*Judgment affirmed. Phipps, P. J., and Dillard, J., concur.*

DECIDED APRIL 6, 2012.

*Brian L. Daly*, for appellant.
*Larry Chisolm, District Attorney, Julayaun M. Waters, Assistant District Attorney*, for appellee.