**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 5, 2013**

# In the Court of Appeals of Georgia

A12A2087. HYMAN v. THE STATE.

MILLER, Presiding Judge.

Following a jury trial, Antonio Dexter Hyman was convicted of armed robbery (OCGA § 16-8-41 (a)), possession of a firearm during the commission of a felony (OCGA § 16-11-106 (b) (1)), escape (OCGA § 16-10-52 (a) (2)), aggravated assault on a correctional officer (OCGA § 16-5-21 (a) (2)), and obstruction of an officer (OCGA § 16-10-24 (a).[1] Hyman filed a motion for new trial, which the trial court denied. On appeal, Hyman contends that his trial counsel provided ineffective assistance in (i) failing to file a motion to sever his trial from that of his co-defendant and (ii) failing to object to hearsay testimony. We discern no error and affirm.

---

[1] Hyman was also charged with possession of a firearm by a convicted felon (OCGA § 16-11-131 (b)). Hyman entered a negotiated guilty plea to this charge during bifurcated post-trial proceedings.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the trial evidence shows that on July 18, 2008, after 11:00 p.m., Hyman and his brother, Bernard Jackson, entered a convenience store in Morgan County and approached the store's cashier. Hyman was wearing a white t-shirt covering his face, except for his eyes, plaid shorts, and red shoes. Hyman was armed with a handgun. Jackson was wearing a white t-shirt covering half of his face from the nose down, a white sock covering a tattoo on his right arm, a black t-shirt, blue shorts, and black shoes. Hyman pointed the gun at the cashier and demanded that she give him the cash from the register and Newport cigarettes. The cashier complied, and handed Hyman and Jackson approximately $300 from the register and several packs of Newport cigarettes. After obtaining the items, Hyman and Jackson fled from the store on foot.

While the armed robbery was in progress, the cousin of Hyman and Jackson was riding through the store's parking lot and observed them perpetrating the crime. The cousin testified that she immediately recognized the perpetrators as being Hyman, who she identified by his nickname "Yayo," and Jackson, who she identified by his nickname "Hard Nard." The cousin called her sister and directed her to report the incident to the police.

2

Officers responded to the scene and spoke to the cashier. The officers obtained the cashier's statement describing the incident and the perpetrators. The officers also obtained the store's surveillance videotape, which depicted the armed robbery incident.

The cousin who had observed the armed robbery incident agreed to speak with the officers. The cousin gave the officers a written statement regarding her observations and identifying Hyman and Jackson as the perpetrators. The cousin advised that she recognized Hyman and Jackson since they were her relatives.

During the course of the investigation, the officers discovered that Jackson had an outstanding probation warrant. Approximately one hour and twenty minutes after the armed robbery had occurred, the officers went to the residence where Jackson and Hyman lived with their mother in order to serve the warrant on Jackson. The mother allowed the officers to enter the residence. While searching for Jackson inside the residence, the officers entered Hyman's bedroom and observed clothing and shoes that matched those worn by the perpetrators at the time of the armed robbery. In addition, the officers observed an unopened pack of Newport cigarettes that matched the sequence number of those in stock at the convenience store.

Another witness testified that on the evening of the armed robbery, he had overheard Hyman and Jackson "loud talking" and bragging about the armed robbery that they had committed. The witness also observed Hyman and Jackson passing out Newport cigarettes to the visitors who had gathered at their residence.

Hyman's ex-girlfriend also provided information regarding Hyman's commission of the armed robbery. She testified that on the day after the armed robbery incident, Hyman had given her some cash and Newport cigarettes. She further stated that it was unusual for Hyman to have cash since he was unemployed. Hyman's ex-girlfriend also watched the videotape depicting the armed robbery incident, and she positively identified Hyman and Jackson as the perpetrators. She testified that she recognized Hyman and Jackson because she had stayed with Hyman every night, and she was familiar with their clothing, shoes, and mannerisms.

Hyman was subsequently arrested and transported to the Morgan County jail for booking in connection with the armed robbery offense. During the booking process, Hyman physically fought with an officer and managed to escape from the jail. Hyman disobeyed the officers' commands to stop, and he continued to run away from the jail facility.

Hyman was later apprehended, charged, tried, and convicted of the offenses related to the armed robbery and escape incidents.

On appeal, Hyman's sole contention of error is that his trial counsel provided ineffective assistance.

> Under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), to succeed on an ineffective assistance claim, a criminal defendant must demonstrate both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case. If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court need not examine the other prong. When reviewing the trial court's decision, this Court will accept the trial court's factual findings and credibility determinations unless clearly erroneous; however, we review legal principles de novo.

(Citations and punctuation omitted.) *May v. State*, 316 Ga. App. 403, 404-405 (2) (729 SE2d 545) (2012). Applying this standard, we turn to address Hyman's claims.

1. Hyman first contends that trial counsel erred in failing to file a motion to sever his trial from that of his co-defendant Jackson. We discern no error.

"The decision regarding whether to file a motion to sever is a matter of trial tactics and strategy, and the fact that such a motion was not filed does not require a finding that trial counsel was ineffective." (Citations and punctuation omitted.) *Ross v. State*, 313 Ga. App. 695, 697 (1) (a) (722 SE2d 411) (2012). At the motion for new trial hearing, trial counsel testified that a motion to sever was not filed because she did not believe that a motion would have been meritorious. Indeed, Hyman has not shown that a motion to sever would have been granted.

> When the death penalty is not sought, the severance of defendants' trials is within the sound discretion of the trial court and its decision will not be disturbed unless there is an abuse of that discretion. The burden is on the defendant moving for severance to demonstrate more than the possibility that a separate trial would provide him with a better chance of acquittal; he must establish a clear showing of prejudice. In exercising its discretion, the trial court must consider the following factors: (1) whether the number of defendants creates confusion as to the law and evidence to be applied to each; (2) whether a danger exists that evidence admissible against one defendant might be considered against the other notwithstanding instructions to the contrary; and (3) whether the defenses are antagonistic to each other or each other's rights.

6

(Citations and punctuation omitted.) *Jones v. State*, 315 Ga. App. 427, 431 (2) (727 SE2d 216) (2012). In this case, Hyman has failed to show that the evidence may have been confusing to the jurors, especially since there were only two co-defendants involved in the case. See *Jones*, supra, 315 Ga. App. at 431-432 (2). Notably, there is no merit to Hyman's claim that the most damaging evidence was relevant only to co-defendant Jackson.[2] To the contrary, both Hyman's cousin, who was an eyewitness to the incident, and his ex-girlfriend, who reviewed the store's surveillance videotape, specifically identified Hyman as the principal actor in the armed robbery. In addition, a witness testified that he had heard Hyman bragging about the armed robbery, and had seen Hyman passing out the Newport cigarettes. The aforementioned evidence

[2] Hyman also complains that trial counsel failed to seek cautionary instructions regarding evidence that was admissible only as to co-defendant Jackson. In this regard, Hyman claims that he was prejudiced by the "spillover" effect of evidence that the cashier identified co-defendant Jackson as a perpetrator in a pretrial lineup, but was unable to identify Hyman; that co-defendant Jackson gave the officers a custodial statement appearing to concede his participation in the armed robbery, but denying that he had the gun; that co-defendant Jackson had encouraged someone to "jump on" the cousin for reporting the crime; and that co-defendant Jackson had made statements to a fellow inmate that he and Hyman had robbed the store. Notably, however, the trial court instructed the jury that it was required to determine the guilt or innocence of each defendant separately. Hyman has not shown that the evidence was so convoluted that the jury was unable to separate the evidence during its consideration. More importantly, as explained above, Hyman's conviction was supported by overwhelming evidence that independently established his guilt of the offenses.

7

specifically related to Hyman and overwhelmingly established his guilt of the armed robbery offense. See id. (ruling that the trial court did not err in denying a motion to sever since there were only two co-defendants, and there was no prejudice since eyewitnesses specifically identified the defendant in question as the principal actor in the armed robbery incident). Since Hyman has shown neither deficient performance nor prejudice based on the decision not to file a motion to sever, he has failed to establish a claim for ineffective assistance of counsel. See, e.g., *Jones*, supra, 315 Ga. App. at 431 (2); *Ross*, supra, 313 Ga. App. at 697 (1) (a).

2. Hyman further contends that trial counsel erred in failing to object to the cousin's hearsay testimony regarding a harassing telephone call that she had received. The cousin testified that she received a telephone call from someone who identified himself by Hyman's nickname "Yayo," asking why she had reported the crime. On cross-examination, trial counsel challenged the cousin's testimony, and the cousin conceded that she did not recognize the caller's voice. At the motion for new trial hearing, trial counsel explained that rather than objecting to the testimony, she elected to cross-examine the cousin regarding the matter in efforts to show the cousin's inability to recognize and identify Hyman.

8

"Not objecting to testimony but instead subjecting it to cross-examination may be part of a reasonable trial strategy." (Citation and punctuation omitted.) *Damerow v. State*, 310 Ga. App. 530, 537-538 (4) (a) (ii) (714 SE2d 82) (2011). The trial court was authorized to find that trial counsel made a reasonable strategic decision to forego an objection and to instead pursue cross-examination on the matter in accordance with the defense theory. See id.; see also *Alexis v. State*, 313 Ga. App. 283, 288-289 (3) (a) (721 SE2d 205) (2011) (ruling that trial counsel was not ineffective when he elected to forego an objection to alleged hearsay and instead pursued the issue on cross-examination). Consequently, Hyman's ineffective assistance claim fails.

*Judgment affirmed. Ray and Branch, JJ., concur.*