**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**February 21, 2014**

# In the Court of Appeals of Georgia

A13A2318. BROYARD v. THE STATE.

MILLER, Judge.

Following a jury trial, Kevin Broyard was convicted of armed robbery (OCGA § 16-8-41 (a)), two counts of aggravated assault OCGA § 16-5-21 (a)), possession of a firearm during the commission of a felony (OCGA § 16-11-106 (b) (1)), and fleeing or attempting to elude an officer (OCGA § 40-6-395 (a)). Broyard appeals from the denial of his motion for new trial, contending that (1) the evidence was insufficient to sustain his convictions and (2) the trial court erred in failing to sever his trial from that of his co-defendant. For the reasons set forth below, we vacate Broyard's conviction on one of the aggravated assault counts and remand this case for resentencing.

Viewed in the light most favorable to the jury's verdict,[1] the trial evidence shows that, on the night of July 12, 2008, Broyard drove his co-defendant, Nolan Welch, in a red pickup truck to the Burger King restaurant on the corner of Fairview Road and Panola Road in Henry County to get something to eat. Around 8:45 that evening, Welch entered the restaurant wearing blue jeans, a long-sleeved thermal shirt, a green and yellow hat and Nike shoes. Welch entered through the door on the right side of the restaurant, approached the front cashier, pulled out a black automatic pistol, pointed the pistol at her face, and told her to open the cash drawer (Count 3). In addition to the pistol, Welch was holding a blue and black bag.

When the cashier told Welch that the manager had the key to the cash drawer, Welch asked "[w]here's the manager?" Welch waived the gun at the cashier and told her to slide over. The cashier then got down on the floor and crawled on her knees to the back of the restaurant. When the cashier got to the back, other employees opened up the drive-through window. The cashier, the back line cook and other employees then crawled through the window and ran to a McDonald's where one of the employees called 911.

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Meanwhile, the assistant manager, who was working the night shift, saw Welch enter the restaurant while the manager was helping a customer. When the cashier alerted the manager, he turned around and saw Welch in the green hat holding the pistol. Welch pointed the pistol at the manager's face, and told the manager to open the cash register and empty it. While the manager was getting the key, Welch hit the manager over the head with the pistol and told the manager to hurry up (Count 2).

When the manager opened the cash drawer, Welch grabbed the drawer, took the money and hopped over the counter (Count 1). Welch then went to the drive-through area, pushed the manual button on the drive-through register, took the money in that drawer and hopped back over the counter. Welch removed more than $700 from the restaurant's cash drawers and put the money in the blue and black bag. Welch then left the restaurant and got into the truck with Broyard, who drove out of the parking lot down Panola Road to Flake's Mill Road.

An officer, who was patrolling the area that night, received a radio call from dispatch about the armed robbery at the Burger King around 8:46 p.m. When the officer arrived at the restaurant, he was greeted by a group of employees who were in the restaurant's parking lot. The employees informed the officer that they had been robbed and that the robber left in a red Ford pickup truck in the direction of Flake's

3

Mill Road. The officer broadcast that information over the radio so that any responding units that were in the area could try to make contact with the suspect. The officer then secured the scene, assisted the manager who had an open wound on his head, and handed witness statement forms to everyone at the scene. The officer then notified the detective division and turned the investigation over to the responding detective.

A police sergeant, who was also in the area that night, heard the radio dispatch about the Burger King robbery. The sergeant headed toward Flake's Mill Road. When he stopped at the intersection of Amsler Road and Flake's Mill Road, a red Ford pickup truck passed by him. The sergeant pulled behind the truck and called in the tag number. The driver then hit the gas, turned left and went up a hill. At the top of the hill the road ended in a gravel driveway that went into the woods.

When the sergeant stopped behind the truck, Broyard and Welch jumped out, turned around and looked at the sergeant. Broyard and Welch then ran down the gravel driveway, and the sergeant followed them and yelled at them to stop. When Broyard stopped, the sergeant ordered him to the ground and handcuffed him. The sergeant called dispatch on his phone, and when other officers arrived on the scene, they took Broyard into custody. The sergeant then returned to the truck, which was

still running. The doors of the truck were closed, so the sergeant looked through the windows and saw some clothes on the front seat, a blue bag and what looked like the butt of a handgun in the open glove compartment.

The crime scene technician who processed the red pickup truck, found the blue and black bag containing $749 in cash, the gun and two cell phones. Subsequent investigation also revealed that the cell phone found on the driver's side belonged to Broyard.[2]

1. Broyard contends that the evidence was insufficient as a matter of law to support his convictions.

(a) Fleeing or attempting to elude an officer.

With regard to the crime of feeling or attempting to elude a pursuing police vehicle, "the relevant statute, OCGA § 40-6-395 (a), provides: [a]ny driver of a vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle when given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a misdemeanor." (Citations and

---

[2] The investigation revealed that the cell phone found on the passenger side on the truck belonged to Welch.

punctuation omitted.) *Westmoreland v. State*, 287 Ga. 688, 692-693 (4) (b) (699 SE2d 13) (2010).

Here, Broyard admitted that, after he and Welch left the Burger King, he "started freaking out" because he heard sirens, Welch had a gun and Welch told him that he had "just robbed the place[.]" Broyard also "hit the gas" when the sergeant pulled behind his truck, and he admittedly jumped out of the truck and ran from the sergeant, even though the sergeant repeatedly ordered him to stop. Accordingly, the evidence was sufficient to support Broyard's misdemeanor conviction, as the driver of the vehicle, for fleeing an officer. See *Dixson v. State*, 313 Ga. App. 379, 383-384 (3) (721 SE2d 555) (2011); *Tauch v. State*, 305 Ga. App. 643, 646 (2) (700 SE2d 645) (2010).

(b) Armed Robbery, Aggravated Assault and Possession of a Firearm during the commission of a felony.

A person commits the offense of armed robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another by use of an offensive weapon. OCGA § 16-8-41 (a). A person commits the offense of aggravated assault when he assaults with the intent to rob or with a deadly

weapon which, when used offensively against a person is likely to or actually does result in serious bodily injury. OCGA 16-5-21 (a).

A person commits the offense of possession of a firearm during the commission of a felony when he has on or within arm's reach of his person a firearm during an armed robbery. See OCGA § 16-11-106 (b) (1). "Where a robbery is committed by the use of a firearm, separate convictions for armed robbery and possession of a firearm during the commission of a crime are specifically authorized by OCGA § 16-11-106 (e)." (Citations and punctuation omitted.) *Howze v. State*, 201 Ga. App. 96, 97 (410 SE2d 323) (1991). Moreover, this Court has held that

> [a] defendant is a party to a crime if he intentionally aids or abets the commission of the crime, or advises, encourages, hires, counsels, or procures another to commit it. Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct before, during, and after the commission of a crime. Further, where a getaway driver waited for his co-defendant to return to the car, the driver was also guilty of his co-defendant's crimes.

(Citations and punctuation omitted.) *Johnson v. State*, 299 Ga. App. 706, 708 (1) (a) (683 SE2d 659) (2009).

7

> Where a party has committed armed robbery and possession of a firearm during commission of a felony, an accomplice who is concerned in the commission of those crimes under OCGA § 16-2-20 is likewise guilty of both offenses, notwithstanding the fact that the accomplice did not have actual possession of the firearm.

(Citation and punctuation omitted.) *Bryson v. State*, 316 Ga. App. 512, 514 (1) (729 SE2d 631) (2012). See also *Howze*, supra, 201 Ga. App. at 97.

Essentially, under the facts of this case, the law allows Broyard to be charged with and convicted of the same offenses as his co-defendant Welch. Notably, the evidence showed that Broyard drove Welch to the Burger King on the night of the crimes, he waited as the getaway driver for Welch to return, and he and Welch fled from the scene in his truck after the robbery. Proof of Broyard's direct commission of the crimes was not required because the jury could infer his participation in the crimes from his conduct before, during and after the crimes. See *Washington v. State*, 285 Ga. 541, 542 (1) (678 SE2d 900) (2009); *Bryson*, supra, 316 Ga. App. at 515 (1) (defendant's flight from officers and act of driving the getaway car were additional circumstances from which the jury could infer his guilt as a party to the crimes). Accordingly, the evidence as set forth above was more than sufficient to support Broyard's convictions as a party to the crimes of armed robbery, aggravated assault

against the manager and cashier, and possession of a firearm during the commission of the armed robbery.

(c) Merger of Broyard's convictions for armed robbery and aggravated assault of the manager.

Merger is one area of law where, even if the defendant did not raise it on appeal, the Georgia Supreme Court and this Court may still consider these issues and vacate convictions and sentences. *Nazario v. State*, 293 Ga. 480, 486 (2) (b) (746 SE2d 109) (2013). Moreover, merger claims cannot be waived because a conviction that merges as a matter of law or fact with another conviction is void, and any resulting sentence is void and illegal. Id. at 485 (2) (b).

Here, Broyard was indicted for and convicted of armed robbery (Count 1) as a party to Welch's actions in taking Burger King's money while in the immediate presence of the manager by use of a gun. Although Broyard's indictment for aggravated assault (Count 2) alleged that the crime was committed by the act of striking the manager about the head with the gun, the evidence as set forth above clearly shows that the armed robbery began when Welch pointed the gun at the manager and demanded cash from the register. Welch hit the manager on the head with the gun when the manager did not immediately comply with his demand to give

9

him the cash. Because the aggravated assault arose out of the same act or transaction as the armed robbery, it was included in and merged with the armed robbery as a matter of fact. For this reason, Broyard's conviction and sentence for aggravated assault against the manager must be vacated. See *Bradley v. State*, 292 Ga. 607, 610 (1) (c) (740 SE2d 100) (2013) (armed robbery and aggravated assault arose out of same act or transaction where defendant pointed gun at victim and immediately thereafter took money from a cigar box).

2. Broyard also contends that the trial court erred in failing to sever his trial from Welch's. We discern no error.

As a preliminary matter, although Broyard argued at his motion for new trial hearing that he requested severance some time before the trial started, the record reveals that no motion was filed. Welch, not Broyard, raised the issue of severance at trial. Accordingly, Broyard has waived any error. See *Allen v. State*, 273 Ga. App. 227, 230 (2) (b) (614 SE2d 857) (2005). Even if not waived, however, Broyard failed to show that the trial court abused its discretion.

The decision whether to grant a severance lies within the discretion of the trial court. OCGA § 17-8-4 (a)*; Mapp v. State*, 258 Ga. 273, 274 (3) (368 SE2d 511) (1988).

10

In exercising its discretion, the trial court must consider the following factors: (1) whether the number of defendants creates confusion as to the law and evidence to be applied to each; (2) whether a danger exists that evidence admissible against one defendant might be considered against the other notwithstanding instructions to the contrary; and (3) whether the defenses are antagonistic to each other or each other's rights.

(Citations and punctuation omitted.) *Jones v. State*, 315 Ga. App. 427, 431 (2) (727 SE2d 216) (2012). Nevertheless, "[i]t is incumbent upon the defendant who seeks a severance to show clearly that he will be prejudiced by a joint trial, and in the absence of such a showing, the trial court's denial of a severance motion will not be disturbed." (Footnote omitted.) *Green v. State*, 274 Ga. 686, 688 (2) (558 S.E.2d 707) (2002). Moreover, "the fact that the evidence as to one of two co-defendants is stronger does not demand a finding that the denial of a severance motion is an abuse of discretion, where there is evidence showing that the defendants acted in concert." (Citation and punctuation omitted.) *Strozier v. State*, 277 Ga. 78, 81 (5) (b) (586 S.E.2d 309) (2003).

In this case, Broyard has failed to show that the evidence may have been confusing to the jurors, especially since there were only two co-defendants involved in the case. See *Jones*, supra, 315 Ga. App. at 431-432 (2). Moreover, the evidence

11

showed that Broyard acted in concert with Welch, because he drove Welch to the Burger King, waited in the getaway truck, and fled with Welch after the robbery. Finally, during the hearing on Welch's severance motion, Broyard concurred with the State's argument that the case was fairly straightforward. Accordingly, Broyard did not show that the trial court abused its discretion in failing to sever his trial. See *Strozier*, supra, 277 Ga. at 81 (5) (b).

In sum, we affirm Broyard's convictions for armed robbery, fleeing and attempting to elude an officer and possession of a firearm during the commission of a crime. We also affirm his convictions for aggravated assault against the cashier (Count 3). We vacate Broyard's conviction for aggravated assault against the manager (Count 2), and remand this case for resentencing.

*Judgment affirmed in part, vacated in part, and case remanded for resentencing. Barnes, P. J., concurs. Ray, J., concurs fully in all but Division 1 (c) and in the judgment only as to Division 1 (c).*